**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARILYN HUERTERO, individually and as
G/A/L for JONATHAN ARRIAGA (infant),

    Plaintiffs,

  v.

UNITED STATES OF AMERICA, U.S.
DEP'T OF HEALTH & HUMAN SERVICES,
and JOHN & JANE DOES #1-10,

    Defendants.

Civil Action No. 13-3739 (MAS)(LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

   This matter comes before the Court upon the motion to dismiss of Defendants United States of America (the "Government") and United States Department of Health and Human Services ("HHS") (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(1). (Defs.' Br., ECF No. 12-1.) Plaintiffs Marilyn Huertero ("Ms. Huertero"), individually and as Guardian Ad Litem for her infant son, Jonathan Arriaga ("Jonathan") (collectively, "Plaintiffs") filed Opposition. (Pls.' Opp'n, ECF No. 15.) Defendants filed a Reply. (Defs.' Reply, ECF No. 18.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and other good cause shown, Defendants' Motion is GRANTED.

**I. BACKGROUND**

   Plaintiffs brought this medical negligence action against Defendants arising from a tragic injury suffered by Jonathan during his birth. (Compl., ECF No. 1, ¶ 1.) On February 14, 2010, at 37.5 weeks pregnant, Ms. Huertero was admitted to the labor and delivery department of Kimball Medical Center in Lakewood, New Jersey, upon a complaint of "ruptured membranes and irregular

contractions." (*Id.* ¶ 15.) Later that day, Ms. Huertero gave birth to her son, Jonathan. At the time of delivery, however, Jonathan demonstrated a "left upper extremity with decreased movement from shoulder to elbow." (*Id.* ¶ 18.) He was diagnosed with "shoulder dystocia" and Erb's palsy, a form of brachial plexus palsy. (*Id.*)

Plaintiffs attribute their injuries to Dr. Adam Repole ("Dr. Repole"), an OB/GYN specialist and employee of Ocean Health Initiatives, Inc. ("OHI"), among others, who was charged with Plaintiffs' pre- and post-natal care and labor and delivery. (*Id.* ¶¶ 4-6, 16.) Specifically, Plaintiffs allege that Dr. Repole and others "deviated from generally accepted standards of practice" by carelessly and negligently caring for Plaintiffs before, during and after delivery. As a result, Plaintiffs have suffered severe and permanent injuries. (*Id.* ¶¶ 20-21, 24, 26, 28, 30-31.)

## II. PROCEDURAL HISTORY

For purposes of simplicity, the Court will use the following timeline regarding relevant, undisputed procedural events:

- On April 8, 2010, Plaintiffs retained counsel, James D. Martin, Esq. (Martin Cert., ECF No. 15-1, ¶ 2.)

- On February 14, 2012—two years after Jonathan's birth—Plaintiffs sued Dr. Repole, Shannon Stillwell, R.N., and Kimball Medical Center/St. Barnabas Health Care System in New Jersey Superior Court. (Compl. ¶ 9.)

- On March 12, 2012, Plaintiffs were advised that Dr. Repole was considered a federal employee, covered by the Federal Tort Claims Act ("FTCA"), at the time Jonathan was born. (Martin Cert. ¶ 6.)

- On May 9, 2012, while the state court action was pending, Plaintiffs filed two administrative tort claims with HHS—one for Ms. Huertero individually and the other by Ms. Huertero as Guardian Ad Litem for Jonathan ("First Administrative Action"). These claims were received by HHS on that day and designated claim numbers 2012-0335 and 2012-0336. (*Id.* ¶ 11; Palacios Decl., ECF No. 12-2, ¶¶ 3-4, Exs. 1-2.)

- On May 23, 2012, HHS issued a final determination of Plaintiffs' administrative claims, denying both claims as untimely. (Palacios Decl. Ex. 3; *see also* Martin Cert. ¶ 11.)

- On June 13, 2012, Plaintiffs sent correspondence to HHS regarding its final determination. This correspondence was received by HHS on June 20, 2012. (Palacios Decl. Ex. 4; Martin Cert. ¶ 11.)

2

- Treating Plaintiffs' June 13 correspondence as a request for reconsideration, HHS again denied Plaintiffs' administrative claims as untimely on July 11, 2012. (Palacios Decl. ¶¶ 6-7, Ex. 5; Martin Decl. ¶ 11.) HHS's correspondence provided that Plaintiffs may file suit in federal court within six months from the date of mailing of the final determination if they were dissatisfied with the outcome. (Palacios Decl. Ex. 5.)

- On August 24, 2012, the Government removed the state court action to this Court, *see Huetero v. Repole*, 12-05340-MAS-DEA ("*Huertero I*").[1] (Compl. ¶ 10; *Huertero I*, ECF No. 1.)

- Three days later, on August 27, 2012, the Government, substituting itself as the defendant, moved to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction due to Plaintiffs' failure to exhaust administrative remedies. (*Huertero I*, ECF No. 2.) Plaintiffs did not oppose the Government's motion.

- On March 7, 2013, the Court granted the Government's motion to dismiss, without prejudice, for Plaintiffs' failure to file an administrative claim. (*Huertero I*, ECF No. 9.)

- On March 8, 2013, Plaintiffs re-filed their two administrative claims with HHS ("Second Administrative Action"). These claims were received by HHS on March 13, 2013, but no claim numbers were assigned. (Compl. ¶ 11; Palacios Decl. ¶¶ 8-9, Exs. 6-7; Martin Cert. ¶ 16.)

- On April 12, 2013, HHS rejected Plaintiffs' attempt to re-file their administrative claims, explaining that "these claims were previously presented and denied" and "cannot be reconsidered again by attempting to present another administrative tort claim." (Palacios Decl. ¶ 10, Ex. 8; *see also* Compl. ¶ 12; Martin Cert. ¶ 16.)

- On April 17, 2013, Plaintiffs sent correspondence to HHS asking whether its April 12 correspondence was a final determination. Plaintiffs did not receive a response. (Martin Cert. ¶ 17, Ex. 11.)

- On June 17, 2013, Plaintiffs filed their Complaint against Defendants in this Court alleging medical negligence surrounding Jonathan's birth.

## III. STANDARD OF REVIEW

Generally, a motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), that is filed prior to answering the complaint is considered a "facial challenge" to the district court's subject matter jurisdiction. *Cardio–Med. Assocs. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983). In a facial challenge, the defendant contests the sufficiency of the well-pleaded allegations insofar as they provide a basis for the court's exercise of subject matter

---

[1] Throughout the Opinion, *Huertero I* will refer to the state court action that was removed to federal court on August 24, 2012.

jurisdiction. *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001). A facial challenge takes the facts in the pleadings as true, construed in the light most favorable to the plaintiff, and determines therefrom whether jurisdiction exists. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

However, the Third Circuit has established a practice of considering facially sufficient FTCA pleadings on a factual basis, even if no answer has been served, for a Rule 12(b)(1) motion. Under a factual challenge, "no presumptive truthfulness attaches to plaintiff's allegations" and the "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Regardless of the approach, the plaintiff carries the burden of establishing jurisdiction. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, in a factual analysis, the jurisdictional elements of FTCA claims are closely aligned with the merits of the case, so caution must be taken by the court not to reach the merits when deciding a Rule 12(b)(1) motion. *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008). As such, district courts must demand "less in the way of jurisdictional proof than would be appropriate at a trial stage." *Id.* (quoting *Gould Elecs.*, 220 F.3d at 178 (internal quotations omitted)).

IV. **DISCUSSION**

　　A. **Plaintiffs' Claims are Barred as Untimely**

Defendants move to dismiss, pursuant to Rule 12(b)(1), Plaintiffs' Complaint as barred by the FTCA's statute of limitations. Plaintiffs allege jurisdiction pursuant to 28 U.S.C. § 1346 coupled with allegations appearing to satisfy the FTCA's jurisdictional requirements. (*See* Compl. ¶¶ 7-13.) Therefore, the Court must now address Defendants' factual challenge to subject matter jurisdiction. For the following reasons, Defendants' motion is granted.

1. <u>Legal Standard</u>

It is well established that the United States has sovereign immunity except where it consents to be sued. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Any waiver of sovereign immunity is strictly construed in favor of the sovereign. *Fed. Aviation Admin. v. Cooper*, 132 S. Ct. 1441, 1448 (2012); *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010). The FTCA is a limited waiver of the United States' sovereign immunity and it gives a district court exclusive jurisdiction over civil actions. 28 U.S.C. § 1346(b).[2] However, "[a]n action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and [it has] been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a).[3]

The time for filing an administrative claim under the FTCA is governed by 28 U.S.C. § 2401(b), which provides, in relevant part, that "[a] tort claim against the United States shall be forever barred unless [1] it is presented in writing to the appropriate Federal agency within two years after such claim accrues[,] or [2] unless action is begun within six months . . . of notice of final denial of the claim by the agency to which it was presented." Section 2401(b) has been interpreted to require that a claimant must *both* present a claim to the federal agency within two years of the time the cause of action accrues and commence suit within six months of the final denial of the claim.

---

[2] Section 1346(b)(1) provides, in pertinent part:

> Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

[3] "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." *Id.*

5

*Willis v. United States*, 719 F.2d 608, 612-13 (2d Cir. 1983); *Gordon v. Pugh*, 235 F. App'x 51, 53 (3d Cir. 2007).

Also, as a safeguard, "Congress established a procedure for a claimant to follow if she initially files an FTCA claim in the wrong forum." *Santos ex rel Beato v. United States*, 559 F.3d 189, 193 (3d Cir. 2009); *see also* Westfall Act, 28 U.S.C. §§ 2671 *et seq.* If a claimant initially files an FTCA claim in state court, the case will be removed to federal court and the United States will be substituted as the party defendant. 28 U.S.C. § 2679(d)(2). Furthermore, if a claimant's initial action was filed in the wrong forum, removed, and then dismissed by the district court for failure to exhaust administrative remedies, the FTCA claim will be deemed timely under § 2401(b) if: (1) "[t]he claim would have been timely had it been filed on the date the underlying civil action was commenced"; and (2) "the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action." *Id.* § 2679(d)(5).

### 2. Parties' Positions

Defendants seek dismissal of Plaintiffs' Complaint because they have failed to comply with the timeliness requirements set forth in the FTCA. (Defs.' Br. 1, 11.) Namely, Defendants assert that Plaintiffs not only filed their administrative claims after the two-year statute of limitations expired, but filed this lawsuit more than six months after their administrative claims were denied by HHS. (*Id.* at 3, 11-12.) Defendants contend that Plaintiffs cannot use HHS's April 12, 2013 rejection of their duplicative claims to "re-start the FTCA clock" and trigger the savings provision of the Westfall Act. (*Id.* at 12; *see also id.* at 13-16; Defs.' Reply 1-5.)

Plaintiffs do not dispute that their First Administrative Action was untimely. (Pls.' Opp'n 11, 13; *see also* Martin Cert. ¶¶ 11-12.) Instead, Plaintiffs submit that their claims are saved under the Westfall Act because their First Administrative Action is "a legal nullity unable to trigger the [FTCA's] six[-]month limitation period." (Pls.' Opp'n 8.) Put differently, Plaintiffs claim that the denial of their First Administrative Action as time barred was a procedural deficiency, meaning that

6

it was not "presented" to the agency at all. Therefore, the six-month period to file suit in federal court was never triggered. (*Id.* at 12-14.)

### 3. Discussion

The issue before the Court is whether Plaintiffs' Second Administrative Action, which was rejected by HHS as duplicative, is saved by the tolling provision of the Westfall Act. The Court finds that it is not and, therefore, Plaintiffs' Complaint is barred as untimely.

As an initial matter, Plaintiffs filed their First Administrative Action with HHS more than two years after the cause of action accrued. "This is a fatal flaw." *Roman-Cancel v. United States*, 613 F.3d 37, 42 (1st Cir. 2010). Despite filing the First Administrative Action, Plaintiffs did not file suit in federal court within six months of HHS's final denial of their claims as required by § 2401(b). When Plaintiffs' First Administrative Action was finally denied, after reconsideration, on July 11, 2012, they were required to file suit by January 11, 2013 to preserve their claims. *Wadwa v. Nicholson*, 367 F. App'x 322, 325 (3d Cir. 2010); *Kieffer v. Vilk*, 8 F. Supp. 2d 387, 395 (D.N.J. 1998). Plaintiffs did not file this lawsuit until June 13, 2013—over five months past the deadline set forth in § 2401(b). Compliance with the FTCA's statute of limitations, however, is a jurisdictional requirement that is strictly construed. *NJ Mfrs. Ins. Co. v. United States*, No. 07-2653, 2008 WL 2168006, at *2 (D.N.J. May 22, 2008) (citations omitted); *Baker v. United States*, No. 12-494, 2013 WL 3745880, at *6 (July 15, 2013) (Simandle, J.) (citing *White-Squire*, 592 F.3d at 457; *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Therefore, Plaintiffs' failure to timely file this lawsuit after denial of the First Administrative Action leaves the Court without subject matter jurisdiction.

Nevertheless, Plaintiffs assert that this lawsuit is timely because they followed the tolling procedures set forth in § 2679(d)(5) by re-filing their claims with HHS within sixty days of the Court's March 7, 2013 dismissal of *Huertero I* and commencing this lawsuit within six months of HHS's rejection of their Second Administrative Action. (Pls.' Opp'n 9-11.) Unfortunately, Plaintiffs

7

made several missteps, foreclosing the opportunity for their claims to be saved under § 2679(d)(5) of the Westfall Act.

For purposes of the Westfall Act's tolling provision, Plaintiffs' First Administrative Action was premature. *See* 28 U.S.C. § 2679(d)(5). The requirements to trigger the tolling provision of the Westfall Act are mandatory and clear: when a plaintiff timely files a FTCA claim in the wrong forum, such as state court, the action must be removed to federal court and dismissed before filing an administrative claim with the appropriate federal agency. 28 U.S.C. §§ 2679(d)(2), (d)(5). Indeed, Plaintiffs knowingly filed their First Administrative Action *before Huertero I* was dismissed. (Pls.' Opp'n 13; *see also* Martin Cert. ¶¶ 10-12.) By filing their First Administrative Action—after expiration of the two-year limitations period and before satisfying the remaining requirements under § 2679(d)(5), *i.e.*, removal and dismissal—Plaintiffs succeeded in thwarting the very safeguard enacted to save claims such as theirs. *See Santos*, 559 F.3d at 193 ("[U]nder the FTCA as originally enacted, if a claimant pursued her claim in the wrong forum she might find the claim barred. . . . [To avoid this harsh result,] Congress amended the FTCA in 1988 to provide statutory tolling of its statute of limitations for timely claims brought erroneously in state court rather than before the appropriate federal agency.") (citing 28 U.S.C. § 2679(d)(5)).

Ultimately, the basis—and flaw—in Plaintiffs' reasoning is the assumption that the denial of the First Administrative Action was a legal nullity. In essence, Plaintiffs ask the Court to ignore HHS's denial of the First Administrative Action, so that the filing of the Second Administrative Action will control for purposes of the Westfall Act's tolling provision. (*See* Pls.' Opp'n 12-14.) However, Plaintiffs' First Administrative Action was presented when the federal agency received written notification of the alleged tortious incident and injuries accompanied by a claim for money damages in sum certain. 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(a). Therefore, HHS's final denial of the First Administrative Action as time barred does not render Plaintiffs' claims a "nullity"; rather, it

...

triggered the six-month limitations period to sue the Government in federal court. 28 U.S.C. § 2401(b).

To have the Court disregard the First Administrative Action would "allow a claimant an opportunity to reopen the FTCA's limitations window by the simple expedient of re-filing a claim to supplant an earlier, functionally equivalent claim on which the window had shut." *Roman-Cancel*, 613 F.3d at 42. Precedent and logic precludes such a result. *See id.* ("If we view the second claim as an attempt to re-file, it would not reconfigure the FTCA time line. Nothing to change the substance of the claims occurred in the interval between the first and second filings. Under these circumstances, the second administrative claim served no legitimate purpose"); *see also Willis*, 719 F.2d at 613. As such, Plaintiffs' First Administrative Action—not the Second—controls for purposes of the FTCA's statute of limitations. To hold otherwise, would be an improper judicial expansion of the Government's waiver of sovereign immunity. *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979).

Lastly, the Court rejects Plaintiffs' contention that it was "procedurally hand-tied from complying with the six month filing period until the Court dismissed [*Huertero I*]." (Pls' Opp'n 13-14.)[4] Even if the Court had dismissed *Huertero I* before March 7, 2013, the result would be the same. Plaintiffs' premature filing of the First Administrative Action triggered the six-month statute of limitations to file a federal suit, so the timing of the Court's dismissal was inconsequential to the resolution of Plaintiffs' First Administrative Action. Moreover, because Plaintiffs' Second Administrative Action was the functional equivalent of the *untimely* First Administrative Action, "it had no practical effect" in tolling Plaintiffs' claims. *Roman-Cancel*, 613 F.3d at 43. Any procedural hand-tying was created by Plaintiffs' own failure to follow the FTCA's statutory commands. *Hedges v. United States*, 404 F.3d 744, 753 (3d Cir. 2005) ("In the long run, experience teaches that strict

---

[4] The Court notes that HHS's subsequent denial of the First Administrative Action during the pendency of *Huertero I* did not satisfy the administrative exhaustion requirement. *McNeil v. United States*, 508 U.S. 106 (1993); *Hoffenberg v. Provost*, 154 F. App'x 307, 310 (3d Cir. 2005).

adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.").[5]

### B.     Equitable Tolling is Unwarranted

Because the Court finds that Plaintiffs' claims are time barred, the Court will now determine whether their claims are saved by the doctrine of equitable tolling.

The Third Circuit recognizes three principal situations in which equitable tolling may apply, including where the plaintiff has in some extraordinary way been prevented from asserting his rights. *Santos*, 559 F.3d at 197; *Hedges*, 404 F.3d at 751. However, the doctrine should be applied "only sparingly" and only where a plaintiff has exercised due diligence in pursuing and preserving the claim. *Santos*, 559 F.3d at 197. To that end, the principles of equitable tolling do not extend to "garden-variety claims of excusable neglect." *Id.* (internal quotation marks and citations omitted); *see also Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) ("In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling.").

The circumstances in the present case do not warrant equitable tolling. Still, Plaintiffs urge the Court to equitably toll their claims because *Huertero I* was pending when the six-month limitations period expired, making it "procedurally impossible" for Plaintiffs to file a new lawsuit within six months of HHS's denial of the First Administrative Action. (*Id.* at 15). In response, Defendants contend that "[e]quitable tolling is simply not intended to remedy Plaintiffs' legal mistakes." (Defs.' Reply 7.)

The Court agrees. Despite twice receiving HHS's correspondence citing the six-month limitation period under § 2401(b), Plaintiffs decided to act contrary to the procedures set forth in the

---

[5] Plaintiffs' inability to determine that Dr. Repole was a federal employee before filing *Huertero I* is irrelevant to the Court's determination, as there is no dispute that Plaintiffs' initial state court action was timely filed despite their lack of knowledge regarding Dr. Repole's employment status.

10

statute. Plaintiffs' explanation why they filed their First Administrative Action before *Huertero I* was dismissed and why they failed to timely file suit after HHS's final denial largely focuses on the mental processes of Plaintiffs' counsel. Certifications and correspondence submitted by counsel in support of Plaintiffs' Opposition reveal that counsel's unfamiliarity with the FTCA spurred his actions. (*See, e.g.*, Martin Cert., Ex. 4 ("The most disturbing piece of information that I discovered was the fact that the Statute of Limitations as to the infant is not tolled in this circumstance. . . . I have to admit, this is a first for me, I'm learning as I go. . . ."); *see also id.* Ex. 11.) However, once Plaintiffs' counsel learned of the FTCA's procedures, he still decided to file the First Administrative action while *Huertero I* was pending despite his knowledge that the claims would be denied as untimely. (Pls.'s Opp'n 6.)

Plaintiffs' mistakes were not beyond their control and, therefore, do not amount to extraordinary circumstances warranting equitable tolling. *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling[.]"); *see also McNeil*, 508 U.S. at 113 ("[M]isconception about the operation of the statute of limitations [is] neither extraordinary nor a circumstance external to [Plaintiffs'] control."). Plaintiffs' assertion that filing a new suit while *Huertero I* was pending would have resulted in "immediate dismissal" of the new action is pure speculation. (Pls.' Opp'n 15.) Although avoiding duplicative litigation is a common goal among courts, dismissal is at the discretion of the court and not automatic. Furthermore, the Court rejects Plaintiffs' assertion that they relied on alleged representations made by the Court's law clerks regarding the status of Plaintiffs' claims in *Huertero I*. (Pls.' Opp'n 15; Martin Cert., Ex. 5, ¶¶ 2-3.) While Plaintiffs' submission shows that counsel was initially unfamiliar with the FTCA, it also shows that he was capable of—and did—conduct legal research to become familiar with the procedures and could have followed them. (*See* Martin Cert., Ex. 11.) Moreover, HHS's correspondence explicitly stated that Plaintiffs were required to file suit within six months of its final denial of the First Administrative Action. (Palacios Decl. Exs. 3, 5.)

11

Finally, regardless of what Plaintiffs did or did not do, or what Plaintiffs' counsel was or was not thinking during the course of *Huertero I* and the instant proceedings, there is nothing in the record suggesting that Plaintiffs were affirmatively misled by HHS, the Government, or the Court. Rather, Plaintiffs' mistakes amount to nothing more than garden-variety negligence based on an apparent unfamiliarity with the relevant law and procedures. Unfortunately, the Court cannot equitably toll Plaintiffs' claims for these reasons and is constrained to dismiss the action for lack of subject matter jurisdiction. The Court acknowledges that dismissal is not the ideal result in this situation, but "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Hedges*, 404 F.3d at 753 (citation omitted).

## V. CONCLUSION

For the reasons stated above and pursuant to Rule 12(h)(3), Plaintiffs' Complaint is dismissed with prejudice and Defendants' Motion to Dismiss is granted. An Order consistent with this Opinion will be entered.[6]

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: April 30, 2014

---

[6] Regardless of the Court's outcome, district courts lack subject matter jurisdiction over federal agencies in suits brought under the FTCA, under which a complaint may only be brought against the United States. *Feaster v. Fed. Bur. of Prisons*, 366 F. App'x 322, 323 (3d Cir. 2010). Therefore, the claims against HHS are also dismissed on this ground.

12